FILED
COURT OF APPEALS
DIVISION II

2013 JUL -9 AM 9: 10

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | | |
|---|---|---|
| STATE OF WASHINGTON, | | No. 43098-3-II |
| Respondent, | | |
| v. | | UNPUBLISHED OPINION |
| PETER JAMES DAVIS, | | |
| Appellant. | | |

TOLLEFSON, J.P.T.[1] — Peter James Davis pleaded guilty to five counts of violating a

domestic violence court order and the trial court imposed a 90-month exceptional sentence.

Davis appeals, asserting that he should be allowed to withdraw his guilty pleas because they

were entered in violation of his due process rights. Davis also asserts that the trial court's

imposition of an exceptional sentence violated his jury trial right. We affirm.

## FACTS

The State charged Davis with 10 counts of violating a domestic violence court order after

Davis made telephone calls from the Lewis County Jail to the protected party's telephone

number. Each of the State's charged counts alleged two aggravating factors: (1) Davis's

unscored criminal history would result in a presumptive sentence that is clearly too lenient and

(2) Davis's multiple offenses and high offender score would result in some current offenses

---

[1] Judge Brian M. Tollefson is serving as judge pro tempore of the Washington State Court of
Appeals, Division II, under CAR 21(c).

going unpunished. Davis agreed to plead guilty in exchange for the State dropping five of the ten charged counts. Davis signed a plea statement that provided in part:

> 7. I plead guilty to: count[s] I-V: Violation of a Court Order [in the] 2nd Amended Information. I have received a copy of that Information.
> 8. I make this plea freely and voluntarily.
> 9. No one has threatened harm of any kind to me or to any other person to cause me to make this plea.
> 10. No person has made promises of any kind to cause me to enter this plea except as set forth in this statement.
> 11. The judge has asked me to state what I did in my own words that makes me guilty of this crime. This is my statement: Between 5-31-11 and 7-1-11 on five sep[a]rate occasions I knowingly violated a [domestic violence] no contact order by contacting . . . the protected party in the order. I have had two prior convictions for violating a court order.

Clerk's Papers (CP) at 49. Davis's plea statement also stated that the prosecuting attorney would recommend that the trial court sentence Davis to 60 months incarceration but further provided:

> The judge does not have to follow anyone's recommendation as to sentence. The judge must impose a sentence within the standard range unless the judge finds substantial and compelling reasons not to do so. I understand the following regarding exceptional sentences:
>
> . . . .
>
> (ii) The judge may impose an exceptional sentence above the standard range if I am being sentenced for more than one crime and I have an offender score of more than nine.

CP at 45.

The trial court held a plea hearing on February 15, 2012. After the State informed the trial court that it was no longer alleging sentencing aggravators, the trial court asked Davis, "You understand that I'm not bound by anybody's deals or anybody's recommendations and I could impose any sentence up to the maximum?" Report of Proceedings (RP) at 5. Davis responded affirmatively. The trial court accepted Davis's guilty pleas, finding that the pleas were made "voluntarily, competently, with an understanding of the nature of the charge and the

2

consequences of the plea [and that] there is a factual basis for the plea." RP at 7. The trial court then proceeded to sentencing.

At the start of the sentencing hearing, Davis's defense counsel stated that there needed to be a change to Davis's prior criminal history stipulation because the stipulation incorrectly listed two prior felony convictions for violations of a no contact order, when only one of the prior no contact order violations was a felony and the other was a misdemeanor. The trial court then struck the word "felony" from one of the convictions for violation of a no contact order listed in Davis's stipulated prior criminal history and reduced Davis's stipulated offender score to "11." The trial court informed Davis that the change in his offender score did not change the standard range sentence and confirmed that Davis agreed to the changes in his stipulated prior criminal history and offender score.

During the sentencing hearing, the State told the trial court that Davis had tried to contact the subject of his domestic violence court order 217 times. Defense counsel objected, arguing that the trial court should limit its consideration to the facts concerning the five counts to which Davis pleaded guilty. The trial court overruled defense counsel's objection. Later, the trial court believed that Davis was "smiling" or "smirking" and it asked Davis, "Is this funny?" RP at 17, 15. Davis replied, "Yeah, I think it is. But I have nothing to say." RP at 15. The trial court then stated:

> [THE COURT]: All right. Question then, counsel. . . . For the unscored criminal history . . . and the aggravators here, I want to hear from the State on the aggravators and the multiple current offenses, some going unpunished. I'll hear from the State on that. I know this was not part of any plea agreement. I want to hear from the State on my authority to impose time on those.

3

RP at 15. The State responded by presenting a police report concerning all the incidents forming the bases for its original charges against Davis, as well as a defendant case history (DCH) printout purporting to list Davis's criminal history. Defense counsel stated that the defense did not agree with all of the allegations contained in the DCH printout or the police report, noting that Davis had only acknowledged the convictions included in his criminal history stipulation. The trial court orally ruled:

> All right. I'm going to impose a sentence of 90 months in the Department of Corrections. Finding the aggravating circumstances, that there is unscored criminal history, that the sentence here would clearly be too lenient, also, a finding that the multiple current offenses, some of which are in effect going unpunished given the offender score of five counts here, several of them are again, given the sentencing range at a maximum of 60 months are going unpunished. That and Mr. Davis's clearly unrepentant attitude here tells me that the sentence of 60 months is clearly too lenient. So the sentence is going to be 90 months, credit for time served for the 57 days.[2]

RP at 18. The trial court also entered the following written findings of fact in support of its imposition of an exceptional sentence:

> (a) The defendant has extensive unscored criminal history.
> (b) Given the defendant's conduct, the standard range sentence would result in a sentence that is clearly too lenient.
> (c) The defendant's offender score is such that some of his current convictions would go unpunished.
> (d) The uncharged offenses in this matter are a justifiable basis for an exceptional sentence.
> (e) The defendant's attitude (smiling smirking and admitting that he thought the proceedings were funny) show a complete lack of remorse and an unrepentant attitude.

---

[2] Davis's judgment and sentence document stated that Davis was being sentenced to 60 months on each of his 5 counts with all counts to be served consecutively and ordered a total incarceration term of 90 months. Because Davis challenges the trial court's imposition of an exceptional sentence only insofar as it implicated his Sixth Amendment right to a jury finding, and because he does not challenge the manner in which the trial court designated such exceptional sentence in his judgment and sentence document, we need not address any error contained in that document.

No. 43098-3-II

> The grounds listed in the preceding paragraph, taken together or considered individually, constitute sufficient cause to impose the exceptional sentence. This court would impose the same sentence if only one of the grounds listed in the preceding paragraph is valid.

CP at 62. Davis timely appeals his judgment and sentence.

## DISCUSSION

### I. VOLUNTARY ENTRY OF GUILTY PLEA

Davis first contends that the trial court violated his due process rights by accepting his guilty plea without establishing that his plea was entered knowingly, intelligently, and voluntarily. Specifically, Davis argues that he did not have a full understanding of his plea due to the trial court's failure to establish that he had two qualifying prior convictions for violating a court order, which is a requisite to elevating a misdemeanor violation of a court order to a felony. We disagree.

We review de novo the circumstances under which a defendant enters a guilty plea. *Young v. Konz*, 91 Wn.2d 532, 536, 588 P.2d 1360 (1979). We also review alleged due process violations de novo. *Post v. City of Tacoma*, 167 Wn.2d 300, 308, 217 P.3d 1179 (2009). Due process requires a defendant's guilty plea be made knowingly, intelligently, and voluntarily. *State v. Mendoza*, 157 Wn.2d 582, 587, 141 P.3d 49 (2006). A guilty plea is not knowing, intelligent, and voluntary unless the defendant has an accurate understanding of the relation of the facts to the law. *State v. R.L.D.*, 132 Wn. App. 699, 705-706, 133 P.3d 505 (2006). An involuntary plea constitutes a manifest injustice, and a defendant may raise this claim for the first time on appeal. *State v. Walsh*, 143 Wn.2d 1, 6-8, 17 P.3d 591 (2001).

5

No. 43098-3-II

The requirement that a guilty plea be made knowingly, intelligently, and voluntarily is embodied in CrR 4.2(d),[3] which prohibits a trial court from accepting a guilty plea without first determining that the defendant understood the nature of the State's charges and the consequences of pleading guilty. Additionally, "[t]o satisfy the requirements of CrR 4.2(d) . . . . there must be sufficient evidence of a factual basis for the plea for a jury to conclude that the defendant is guilty of the crime charged." *State v. A.N.J.*, 168 Wn.2d 91, 118, 225 P.3d 956 (2010).

> "[T]he factual basis [requirement] may be satisfied by a recitation of facts the prosecutor would prove at trial. Where the prosecutor's factual statement is orally acknowledged by the defendant or where the court orally interrogates the defendant concerning his conduct, the constitutional requirements are satisfied and both society and the defendant are better served. Where, however, the court relies only on the written statement of the defendant on the guilty plea form, it must insure the facts admitted amount to the violation charged. Anything less endangers the finality of the plea."

*State v. S.M.,* 100 Wn. App. 401, 414, 996 P.2d 1111 (2000) (alterations in the original) (quoting *In re Pers. Restraint of Taylor*, 31 Wn. App. 254, 259, 640 P.2d 737 (1982)). In entering a guilty plea to charges in the State's information, a defendant admits all the allegations contained in the information. *State v. Pringle*, 83 Wn.2d 188, 190-91, 517 P.2d 192 (1973).

RCW 26.50.110 provides in part:

> **Violation of order—Penalties.** (1)(a) Whenever an order is granted under this chapter, chapter 7.90, 9.94A, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or there is a valid foreign protection order as defined in RCW 26.52.020, and the respondent or person to be restrained knows of the order, a violation of any of the following provisions of the order *is a gross misdemeanor, except as provided in subsections (4) and (5) of this section*:

---

[3] CrR 4.2(d) provides:
> **Voluntariness.** The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

6

(i) . . . restraint provisions prohibiting contact with a protected party.
. . . .
(5) A violation of a court order issued under this chapter, chapter 7.90, 9.94A, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or of a valid foreign protection order as defined in RCW 26.52.020, *is a class C felony if the offender has at least two previous convictions for violating the provisions of an order issued under this chapter, chapter 7.90, 9.94A, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or of a valid foreign protection order as defined in RCW 26.52.020.* The previous convictions may involve the same victim or other victims specifically protected by the orders the offender violated.

(Emphasis added.)

Davis contends that the trial court failed to establish a factual basis for his guilty plea because his criminal history stipulation did not specify that his prior convictions for violating a court order were qualifying convictions under RCW 26.50.110(5), which qualifying convictions are necessary to elevate his crime to a class C felony. In support of this contention, Davis argues that protection orders may be issued under chapter 10.14 RCW, which is not listed in RCW 26.50.110(5). Although we agree that protection orders issued under chapter 10.14 RCW are not included within RCW 26.50.110(5)'s enumerated list of qualifying prior convictions, we hold that a sufficient factual basis supported the trial court's acceptance of Davis's guilty pleas because he acknowledged that his prior convictions qualified under RCW 26.50.110(5).

Here, Davis signed a plea statement that provided he was pleading guilty to five counts of violation of court order as charged in the State's second amended information, which information Davis stated he had received. Each of the charged counts in the State's second amended information provided "the defendant did have at least two prior convictions for violating the provisions of a court order *issued under Chapter 10.99, 26.09, 26.10, 26.26, 26.50, 26.52, and/or a valid foreign protection order as defined in RCW 26.52.020*; contrary to Revised Code of Washington 26.50.110." CP at 2-13 (emphasis added). Paragraph 11 of Davis's plea

7

statement also included the following handwritten statement, "Between 5-31-11 and 7-1-11 on five sep[a]rate occasions I knowingly violated a DV no contact order by contacting . . . the protected party in the order. I have had two prior convictions for violating a court order." CP at 49. Additionally, at his plea hearing, the trial court confirmed that Davis had a full understanding of the factual bases and legal consequences of his guilty plea by asking Davis the following:

> [THE COURT]: All right. Is this your statement: "Between May 31, 2011 and" this looks like "July 1, 2011"?
> [DAVIS]: Yes.
> [THE COURT]: "On five separate occasions I knowingly violated a domestic violence no contact order by contacting . . . the protected party in the order. I've had two prior convictions for violating a court order."
> [DAVIS]: Yes, it is.
> [THE COURT]: You agree that the prior domestic violence protection order was a valid order?
> [DAVIS]: Yes.
> [THE COURT]: And that you had knowledge of that order?
> [DAVIS]: Yes.
> [THE COURT]: And you knowingly violated it by making the phone calls?
> [DAVIS]: Yes, I did.
> [THE COURT]: State feel that's a sufficient statement?
> [STATE]: He indicated it's five separate occasions, correct, Your Honor?
> [THE COURT]: Yes, five separate occasions.
> [STATE]: That's fine.
> [THE COURT]: And those five separate occasions coincide with the date and times alleged in counts one through five, that's what you're pleading to?
> [DAVIS]: Yes.

RP at 5-6. This colloquy, together with Davis's acknowledgment in his plea statement that he was pleading guilty to violating domestic violence no contact orders as charged in the State's second amended information, which information alleged that Davis had two prior qualifying convictions under RCW 26.50.110, shows that Davis had a full understanding of his plea despite his failure to specify in his criminal history stipulation the statutes under which his prior court

8

orders had issued. Because the record clearly demonstrates that Davis had a full understanding of his guilty plea to felony violations of a domestic violence court order, we hold that the trial court did not violate Davis's due process rights by accepting his guilty plea.

II.     EXCEPTIONAL SENTENCE/JURY TRIAL RIGHT

Next, Davis contends that the trial court imposed an exceptional sentence in violation of his Sixth Amendment right to a jury trial. Again, we disagree.

We review de novo a sentencing court's statutory authority to impose an exceptional sentence under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. *State v. Mann*, 146 Wn. App. 349, 357, 189 P.3d 843 (2008); *State v. Murray*, 118 Wn. App. 518, 521, 77 P.3d 1188 (2003). We also review alleged constitutional violations de novo. *State v. Siers*, 174 Wn.2d 269, 273-74, 274 P.3d 358 (2012).

In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the United States Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Supreme Court later clarified its *Apprendi* decision in *Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct.2531, 159 L. Ed. 2d 403 (2004), where it held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."

Here, the sentencing court provided five alternative findings for imposing an exceptional sentence and stated that it "would impose the same sentence if only one of the grounds . . . is valid." CP at 62. Because the State concedes that the sentencing court lacked authority to

9

impose an exceptional sentence under four of its five stated grounds absent a jury finding, we address only whether Davis's Sixth Amendment right to a jury trial was violated by the trial court's imposition of an exceptional sentence upon its finding that "[t]he defendant's offender score is such that some of his current convictions would go unpunished."[4] CP at 62.

Davis relies on *State v. Hughes*, 154 Wn.2d 118, 134, 139-40, 110 P.3d 192 (2005), *abrogated on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006) to support his argument that a jury finding was required before the trial court could impose an exceptional sentence based upon Davis's current convictions going unpunished due to his high offender score. In *Hughes*, our Supreme Court held that in undertaking a 'free crimes' analysis under the SRA, "[t]he conclusion that allowing a current offense to go unpunished is *clearly too lenient* is a factual determination that *cannot* be made by the trial court following *Blakely*." 154 Wn.2d at 140 (some emphasis added). In reaching this conclusion, the *Hughes* court relied on the language of former RCW 9.94A.535(2)(i) (2003), which stated, "The operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter, as expressed in RCW

---

[4] Specifically, the State has conceded that the following stated grounds by the trial court cannot justify the imposition of an exceptional sentence absent a jury factual determination:
    (a) The defendant has extensive unscored criminal history.
    (b) Given the defendant's conduct, the standard range sentence would result in a sentence that is clearly too lenient.
    . . . .
    (d) The uncharged offenses in this matter are a justifiable basis for an exceptional sentence.
    (e) The defendant's attitude (smiling smirking and admitting that he thought the proceedings were funny) show a complete lack of remorse and an unrepentant attitude.
CP at 62.

10

No. 43098-3-II

9.94A.010." *See State v. Alvarado*, 164 Wn.2d 556, 563, 192 P.3d 345 (2008). As the court

noted in *Alvarado*, however, the legislature amended chapter 9.94A RCW in 2005 to comply

with *Blakely*. 164 Wn.2d at 564. The current applicable statutory provision now provides:

> (2) Aggravating Circumstances—Considered and Imposed by the Court
> The trial court may impose an aggravated exceptional sentence without a finding of fact by a jury under the following circumstances:
>
> . . . .
>
> (c) The defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offense going unpunished.

RCW 9.94A.535(2)(c). The *Alvarado* court held that under this statutory provision no "clearly

too lenient" finding is required and thus, "the only factors the trial court relies upon in imposing

an exceptional sentence . . . are based on criminal history and the jury's verdict on the current

convictions[, which b]oth fall under the *Blakely* prior convictions exception, as no judicial fact

finding is involved." 164 Wn.2d at 566-67 (citation omitted). Accordingly, the trial court's

imposition of an exceptional sentence under RCW 9.94A.535(2)(c) did not implicate Davis's

Sixth Amendment jury trial right and we affirm his judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

TOLLEFSON, J.P.T.

We concur:

WORSWICK, C.J.

JOHANSON, J.

11